# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 6, 2016 Session

## IN RE ADRIANNA S.

### Appeal from the Juvenile Court for Coffee County
#### No. 15J0400    Timothy R. Brock, Judge

_____

### No. M2015-02514-COA-R3-PT – Filed September 29, 2016

_____

Father appeals the termination of his parental rights. In 2011, Father was sentenced to serve concurrent fifteen-year and four-year prison sentences. Thereafter, the Department of Children's Services filed a petition to terminate Father's parental rights under Tenn. Code Ann. § 36-1-113(g)(6), which provides grounds for termination when the parent is imprisoned under a sentence of ten or more years and "the child is under eight (8) years of age at the time the sentence is entered by the court." Father argued that this statute does not provide grounds for termination in this case because the child was not born at the time of Father's sentencing; therefore, the statutory requirement that there be a "child" under the age of eight at the time of the parent's sentencing has not been met. The juvenile court determined that the statutory language includes a child in utero at the time of the parent's sentencing and the evidence clearly and convincingly established grounds for terminating Father's parental rights. The juvenile court also determined that termination of Father's parental rights is in the best interests of the child. After review, we affirm the holding of the juvenile court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Peter Trenchi, III, Sewanee, Tennessee, for the appellant, Ernest B.[1]

Herbert H. Slatery, III, Attorney General and Reporter, and W. Derek Green, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

---

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

**OPINION**

Earnest B. ("Father") and Eden S. ("Mother") are the parents of Adrianna S., a minor child born April 15, 2012. Father is imprisoned with the Tennessee Department of Corrections, serving concurrent fifteen-year and four-year sentences. These sentences were imposed on June 17, 2011, and November 18, 2011, shortly before the child's birth. Father is eligible for parole in 2017.

After the child's birth, she resided with Mother and the child's half-sister, Alandria.[2] However, on February 14, 2014, the children were removed from Mother's care by the Tennessee Department of Children's Services ("DCS") due to concerns regarding Mother's substance abuse, mental health problems, and reports of neglect of the children. The juvenile court entered an order finding the children dependent and neglected on July 11, 2014.

After the children were taken from Mother, Father attempted to provide DCS with placement options within his extended family. Father initially suggested that his mother be given custody of the children; however, after meeting with Father's mother, DCS determined that she could not take care of the children herself. DCS then began facilitating a relationship between the children and Father's sister. DCS provided supervised visitations with Father's sister and eventually requested the juvenile court approve a trial home visit. Nevertheless, Father's sister subsequently informed DCS that she was no longer a placement option for the children due to financial concerns and indicated that she could not meet the children's needs.

Thereafter, Father identified two of his nieces as potential placements; however, one niece had a criminal history for domestic violence and the other niece stated that she could not be a primary caretaker. DCS then discussed placing the children with Father's brother, but he was not financially capable of caring for the children and also had a criminal history. As a result, the children have been in foster care since leaving Mother's custody.

On May 11, 2015, DCS filed a petition to terminate Mother and Father's parental rights with regard to Adrianna. The juvenile court ultimately granted this petition with regard to Mother, finding that termination was warranted on the grounds of mental incapacity, persistence of conditions, and substantial non-compliance with permanency plans. The court also found that termination of Mother's parental rights was in the child's

---

[2] Adrianna and Alandria share a mother, Eden S., but have different fathers.

best interests. Mother did not appeal from this order; therefore, the termination of her rights is not at issue.[3]

With regard to Father, the DCS petition sought to terminate his parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(6), which provides grounds for termination when:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

During the trial on this petition, the juvenile court heard testimony from the DCS case manager assigned to the case. The case manager testified that the child has multiple health issues, which require that she live in a consistent, stable home. Specifically, the child requires speech therapy and has a potential hearing impairment. The case manager testified that the foster family is "very committed" to the child and caring for her multiple health issues. She also indicated that Adrianna and her sister need to stay together in order to preserve the "close bond" that they share and stated that, if given the opportunity, the foster family would adopt Adrianna and her sister. However, the children would most likely be split up upon Father's release from prison if he was to retain his parental rights to Adrianna. The case manager further testified that, although Father has sent multiple letters, cards, and presents to his daughter, Adrianna has never met Father in person.

Additionally, Father testified that he has attended prison programs for parenting, drug addiction, and anger management. He also acknowledged that Adrianna and her sister are close and stated that he was willing to take care of both girls upon his release, with the help of his nieces. Father testified that, if he was unable to receive custody of Alandria, he would make sure that the girls have contact with each other very often.

After the closing of proof, Father argued that termination of his parental rights would not be in Adrianna's best interest. He also asserted that Tenn. Code Ann. § 36-1-113(g)(6) should not be an applicable grounds for termination in this case because Adrianna was not born at the time of Father's sentencing; therefore, the statutory requirement that there be a "child" under the age of eight at the time of the parent's sentencing has not been met.

---

[3] The DCS petition also sought to terminate Mother's parental rights with regard to Alandria and was successful in this regard.

Thereafter, the juvenile court ruled from the bench regarding the best interests of the child. The court found that termination of Father's rights was in the child's best interests based on, *inter alia*, Father's limited contact with the child, the importance of keeping the child in the same home as her sister, and the bond the child has with her foster family. However, the court reserved judgment regarding the grounds for terminating Father's parental rights. The court requested the parties brief the issue of the applicability of Section 36-1-113(g)(6) and reset the matter for oral argument.

The parties submitted briefs on this issue. In his brief, Father's counsel asserted that a strict reading of the Section 36-1-113(g)(6) shows that it applies when the parent's "child" is under eight years of age, which does not include an unborn fetus. Additionally, Father's counsel argued that any other reading of the statute would render Section 36-1-113(g)(6) unconstitutional because the statute would no longer be narrowly tailored, as required by the strict scrutiny standard for laws affecting fundamental rights.

DCS argued that, while no Tennessee appellate court decisions had considered this exact issue, multiple cases have found that the term "child" in another termination statute, Tenn. Code Ann. § 36-1-102(1)(A)(iv), relating to "wanton disregard," applies when the acts occurred when the child was in utero. Accordingly, DCS contended that Section 36-1-113(g)(6) should apply in this case.

After considering these arguments, the juvenile court entered an order terminating Father's parental rights. In so doing, the court found that that Section 36-1-113(g)(6) applies to a child in utero at the time of the parent's sentencing. The court noted that, although there have not been any Tennessee appellate court decisions directly addressing this issue, there have been several appeals from terminations under Section 36-1-113(g)(6) in which the child in question was unborn at the time of sentencing, all of which were affirmed by the court of appeals. Further, the juvenile court was persuaded by DCS's argument regarding the cases interpreting the "wanton disregard" statute.

Additionally, because Father did not raise the constitutionality of the statute in any pleading prior to trial, during opening argument, during the introduction of proof, or during closing arguments, the juvenile court determined that the constitutionality argument was not timely made and should be considered waived. The juvenile court's order also restated its conclusion from trial that termination of Father's rights was in the child's best interests.

Father initiated this appeal and raises several issues. Generally stated, he asserts that: (1) Tenn. Code Ann. § 36-1-113(g)(6) does not provide grounds for terminating his parental rights because no "child" existed at the time his prison sentence was imposed; (2) application of Section 36-1-113(g)(6) in this case would be unconstitutional, and the juvenile court erred by declining to consider this issue; and (3) DCS failed to make reasonable efforts in the child's best interests to place the child with Father's relatives.

STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children under both the United States and Tennessee constitutions. *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002) (citing *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972)). This right is superior to the claims of other persons and the government, yet it is not absolute; the state may terminate a person's parental rights under certain circumstances. *In re Heaven L.F.*, 311 S.W.3d 435, 438 (Tenn. Ct. App. 2010); *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Adoption of Angela E.*, 402 S.W.3d at 629 (citing *In re Valentine*, 79 S.W.3d at 546).

We review the trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). Under Rule 13(d), appellate courts review factual findings de novo on the record with a presumption of correctness unless the evidence preponderates otherwise. *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). "In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596-97). The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which we review de novo with no presumption of correctness. *Id.* (citing *In re M.L.P.*, 281 S.W.3d at 393). As in other appeals, all other questions of law in a parental termination case are reviewed de novo with no presumption of correctness. *Id.* (citing *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010)).

## ANALYSIS

### I. GROUNDS FOR TERMINATION

In order to terminate the parental rights of a biological parent, a petitioner must first prove, by clear and convincing evidence, at least one of the listed grounds for

termination. *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015). Among these grounds, a parent's rights may be terminated if:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6).

In this case, Father does not challenge the juvenile court's finding that he is confined in a correctional facility under sentences of ten years or more. However, he contends that, because these sentences were imposed before the child's birth, the statutory requirement that there be a "child under eight (8) years of age at the time the sentence is entered" has not been satisfied. Thus, he contends that Tenn. Code Ann. § 36-1-113(g)(6) does not provide grounds for terminating his parental rights.

Additionally, Father argues that application of Section 36-1-113(g)(6) to these facts would render the statute unconstitutional. Specifically he contends that, under this application, the statute would no longer be narrowly tailored and, therefore, would not pass the strict scrutiny standard required for laws affecting fundamental rights. Father contends that the trial court erred by failing to consider this issue.

### A. Interpretation of Tenn. Code Ann. § 36-1-113(g)(6)

Although this court has reviewed cases involving similar factual scenarios, *see In re Adoption of K.B.H.*, 206 S.W.3d 80 (Tenn. Ct. App. 2006); *In re D.L.G.*, No. M2009-00944-COA-R3-PT, 2009 WL 3817290 (Tenn. Ct. App. Nov. 13, 2009), we have not yet addressed the issue of whether "child," for purposes of Tenn. Code Ann. § 36-1-113(g)(6), includes one that is in utero at the time of the parent's sentencing. Therefore, this case presents a matter of first impression.

The question of whether a fetus constitutes a "child" or a "person" is one of the most divisive and hotly contested issues of our time. *See Planned Parenthood of M. Tenn. v. Sundquist*, 38 S.W.3d 1, 25 (Tenn. 2000) (Barker, J., dissenting in part, concurring in part). The task of this court is not to resolve this debate or ascertain the "correct" answer to this deeply philosophical question. *See id.* Instead, the determination of public policy is primarily within the province of the legislature, *see Griffin v. Shelter Mut. Ins. Co.*, 18 S.W.3d 195, 200 (Tenn. 2000), and it is the duty of the court to ascertain and give effect to the legislature's intention and purpose. *Lavin v. Jordan*, 16 S.W.3d 362, 369 (Tenn. 2000); *see also Planned Parenthood of M. Tenn.*, 38 S.W.3d at 25 ("[T]he function of [the judiciary] is not to read preferences or predilections into the

law, nor is it to rewrite the law merely because we can. Rather, our task today, in the familiar words of Chief Justice John Marshall, is 'to declare what the law is[.]'").

In undertaking this task, we are guided by the following well-established principles of statutory construction:

> When the statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would limit or expand the statute's application. *See* [*Lipscomb v. Doe*, 32 S.W.3d 840, 844 (Tenn. 2000)]; *Carson Creek Vacation Resorts, Inc. v. State Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993). Where an ambiguity exists, we must look to the entire statutory scheme and elsewhere to ascertain the legislative intent and purpose. *State v. Walls*, 62 S.W.3d 119, 121 (Tenn. 2001); *Freeman* [*v. Marco Transp. Co.*, 27 S.W.3d 909, 911 (Tenn. 2000)]. The statute must be construed in its entirety, and it should be assumed that the legislature used each word purposely and that those words convey some intent and have a meaning and a purpose. *Tennessee Growers, Inc. v. King*, 682 S.W.2d 203, 205 (Tenn. 1984). The background, purpose, and general circumstances under which words are used in a statute must be considered, and it is improper to take a word or a few words from its context and, with them isolated, attempt to determine their meaning. *First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 207 S.W.2d 1007, 1009-10 (1948).

*Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004).

### i. Plain Language of the Statute

In interpreting a statute's meaning, "[t]he text of the statute is of primary importance." *In re Kaliyah S.*, 455 S.W.3d at 552. Where the words of a statute are clear and fully express the legislature's intent, there is no room to resort to auxiliary rules of construction. *Bryant v. HCA Health Servs. of N. Tenn., Inc.*, 15 S.W.3d 804, 809 (Tenn. 2000). Accordingly, the text of the statute provides the starting point for our analysis.

Tenn. Code Ann. § 36-1-113(g)(6) permits termination of parental rights if a parent is incarcerated under a sentence of ten or more years and "the *child* is under eight (8) years of age at the time the sentence is entered by the court." (emphasis added). Tenn. Code Ann. § 36-1-102(13) defines the term "child" for purposes of Section 36-1-113(g)(6) as "any person or persons under eighteen (18) years of age." However, the terms "person or persons" are not further defined, and the statutes are silent on whether a fetus falls within the definition of "child."

As stated above, the question of whether a fetus constitutes a "person" or "child" is a contentious issue about which reasonable minds continually disagree. *See Planned Parenthood of M. Tenn.*, 38 S.W.3d at 25. Because of this vast disagreement, it is unclear by simply examining the terms "child" and "person" whether the legislature intended for a fetus to be considered a "child under eight" for purposes of Section 36-1-113(g)(6). *See Sallee v. Barrett*, 171 S.W.3d 822, 828 ("A statute is ambiguous if the statute is capable of conveying more than one meaning."). Therefore, because the statutory language is ambiguous, we must look elsewhere to ascertain the legislative intent.

ii. Statutory Scheme & Purpose

When statutory language is ambiguous, the court may reference the "broader statutory scheme" in deciphering legislative intent. *In re Baby*, 447 S.W.3d 807, 818 (Tenn. 2014). "[I]t is a well-settled rule of construction that statutes in pari materia— those relating to the same subject or having a common purpose—are to be construed together, and the construction of one such statute, if doubtful, may be aided by considering the words and legislative intent indicated by the language of another statute." *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (internal quotations omitted); *see also Stevens v. Linton*, 229 S.W.2d 510, 512 ("[I]f divers statutes relate to the same thing, they are all to be taken into consideration in construing any one of them."); *In re Kaliyah S.*, 455 S.W.3d at 552. "[A] construction which places one statute in conflict with another is to be avoided, and we must endeavor to resolve any possible conflict between statutes in favor of each other in order to provide a harmonious operation of laws." *In re Baby*, 447 S.W.3d at 818 (citing *Lovlace v. Copley*, 418 S.W.3d 1, 20 (Tenn. 2013)).

Further, in ascertaining the intent of the legislature, this court may look to a statute's "subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment." *State v. Gilliland*, 22 S.W.3d 266, 275 (Tenn. 2000) (quoting *State v. Lewis*, 958 S.W.2d 736, 739 (Tenn. 1997)).

Tenn. Code Ann. § 36-1-113(g)(6) is part of a larger statutory scheme providing procedures and rules for the adoption of children. *See* Diana L. Schmied, *A Roadmap Through Tennessee's New Adoption Statute*, 27 U. MEM. L. REV. 885, 885 (1997). This system, as it exists in its present form, was created after a comprehensive revision of the adoption statutes by the Tennessee legislature in 1995. *In re Kaliyah S.*, 455 S.W.3d at 543. Included in these changes was an overhaul of the statutes on the rights of biological parents in which the legislature provided a cumulative list of the grounds upon which a parent's rights may be terminated. *See Id.*; Tenn. Code Ann. § 36-1-113(g).

Since the passage of the revised statutes, these grounds for termination have been the subject of countless litigation. Nevertheless, this court has yet to consider the definition of "child" for purposes of Tenn. Code Ann. § 36-1-113(g)(6). However, we

have considered the definition of the term "child" in the context of several other statutory grounds for terminating parental rights.

In the case of *In re Anthony R.*, we considered the definition of "child" for the purposes of Tenn. Code Ann. § 36-1-113(g)(1), which provides grounds for terminating a parent's rights if "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]" *See In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015). Section 36-1-102 states that a parent will be deemed to have "abandoned" his or her child when, *inter alia*, the parent "is incarcerated . . . [or] has been incarcerated during all or part of the four (4) months immediately preceding the institution of [an action to terminate parental rights], and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a *wanton disregard* for the welfare of the *child*." Tenn. Code Ann. § 36-1-102(1)(A)(iv) (emphasis added). In that case, the juvenile court determined that the father, by engaging in criminal activity prior to the child's birth, engaged in conduct amounting to a "wanton disregard" for the child. *In re Anthony R.*, 2015 WL 3611244, at *3 n.2. The father argued that Section 36-1-113(g)(1) could not serve as a basis for terminating his parental rights because he was unaware that the child's mother was pregnant at the time he engaged in his criminal activity. *Id.* at *2.

On appeal, we noted that "[i]n the context of 'wanton disregard for the welfare of the child,' our courts have extended the definition of 'child' to include the period of pregnancy." *Id.* at *3 (citing *In re Jamazin H.M.*, W2013-01986-COA-R3-PT, 2014 WL 2442548, at *9 (Tenn. Ct. App. May 28, 2014), *perm. app. denied* (Aug. 22, 2014); *In re Jocilyn M.P.*, 435 S.W.3d 773, 782 (Tenn. Ct. App. 2014); *In re O.J.B.*, No. W2009-00782-COA-R3-PT, 2009 WL 3570901, at *5 (Tenn. Ct. App. Nov. 2, 2009); *State of Tenn., Dep't of Children's Servs. v. Harville*, No. E2008-00475-COA-R3-PT, 2009 WL 961782, at *8 (Tenn. Ct. App. Apr. 9, 2009); *In re S.L.A.*, 223 S.W.3d 295, 300 (Tenn. Ct. App. 2006); *In re C.T.S.*, 156 S.W.3d 18, 25 (Tenn. Ct. App. 2004)). However, "while the statutory reference to 'the child' can mean a child in utero," we determined that Section 36-1-113(g)(1) could not serve as a basis for termination under these facts because the statute requires the father to have knowledge of the child at the time his actions constituting wanton disregard are taken. *Id.* ("Logically, a person cannot disregard or display indifference about someone whom he does not know exists.").

Additionally, in *In re Benjamin M.*, this court considered the definition of "child" for purposes of "severe child abuse." *See In re Benjamin M.*, 310 S.W.3d 844, 847-49 (Tenn. Ct. App. 2009). In that case, DCS filed a petition alleging that a minor child was born dependent and neglected because his mother abused drugs during her pregnancy and this drug abuse constituted "severe child abuse" under Tenn. Code Ann. § 37-1-102(21). *Id.* at 845. Section 37-1-102(21) defines "severe child abuse" as "the knowing exposure of a *child* to or the knowing failure to protect a *child* from abuse or neglect that is likely to cause serious bodily injury or death . . . ." (emphasis added). The statute further defines "child" in a manner identical to the statute at issue in the present case—i.e., "a

- 9 -

person under eighteen (18) years of age . . . ." *See* Tenn. Code Ann. § 37-1-102(a)(4)(A). The mother argued that this definition of "child" does not include a fetus; therefore, her drug abuse during pregnancy cannot constitute severe child abuse. *In re Benjamin M.* 310 S.W.3d at 847.

On appeal, we disagreed with the mother's argument. *Id.* at 848. We noted that the statutory scheme at issue provides protection to juveniles and "unmistakably contemplates intervention based upon present conduct to prevent future injury, as well as consequences for past conduct that has caused a present injury or is likely to cause a future injury." *Id.* Therefore, because harm could occur to the child after birth based upon pre-birth conduct, we held that mother's prenatal drug use constituted severe child abuse. *Id.*[4]

As can be seen from these cases, the term "child" has been interpreted as including the period of pregnancy for at least two other statutory grounds of termination. *See In re Benjamin M.*, 310 S.W.3d at 847; *In re Anthony R.*, 2015 WL 3611244, at \*3. Reading Tenn. Code Ann. § 36-1-113(g)(6) in pari materia with these statutes, we conclude that the term "child" in Section 36-1-113(g)(6) also includes a child in utero.

This conclusion is supported by the statutory purpose behind Tenn. Code Ann. § 36-1-113(g)(6) and the goals of Tennessee's adoption statutes. *See State v. Gilliland*, 22 S.W.3d at 275 (noting that courts may consider the "subject matter, the object and reach of the statute, the wrong or evil which it seeks to remedy or prevent, and the purpose sought to be accomplished in its enactment" in ascertaining legislative intent).

Specifically, we have noted, "the focus of [Section 36-1-113(g)(6)] is on whether the child can live with the parent and have . . . the child's day-to-day needs met. . . . A parent who is incarcerated for a period of ten or more years when the child is eight years old or younger will be *completely* unavailable to care for the child for the majority of his childhood." *In re Adoption of J.K.W.*, No. E2006-00906-COA-R3-PT, 2007 WL 161048, at \*8 (Tenn. Ct. App. Jan. 23, 2007) (citing *In re Marr*, No. M2001-02890-COA-R3-CV, 2003 WL 152640, at \*12-13 (Tenn. Ct. App. Jan. 23, 2003), *vacated on other grounds by Osborn v. Marr*, 127 S.W.3d 737 (Tenn. 2004)) (emphasis in original). Further, "the obvious intention of [Tenn. Code Ann. § 36-1-113(g)(6) is] to achieve permanency for children whose parents are subjected to the possibility of lengthy prison sentences." *In re Chandler M.*, No. M2013-02455-COA-R3-PT, 2014 WL 3586499, at \*7 (Tenn. Ct. App. July 21, 2014). Indeed, the legislature has expressly provided:

---

[4] Following this case, we have held that prenatal drug use may constitute a grounds for terminating parental rights under Tenn. Code Ann. § 36-1-113(g)(4), which provides a grounds for termination when a parent "has been found to have committed severe child abuse as defined in § 37-1-102 . . . ." *See e.g.*, *In re Shannon P.*, No. E2012-00445-COA-R3-PT, 2013 WL 3777174, at \*4-5 (Tenn. Ct. App. July 16, 2013).

The primary purpose of [the adoption statutes] is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, which are specifically protected by the constitutions of the United States and the state of Tennessee and to those ends seek to ensure, to the greatest extent possible, that:

. . .

(3) The rights of children to be raised in loving homes that are capable of providing proper care for adopted children and that the best interests of the children in the adoptive process are protected;

. . .

(5) The adoption proceedings are held in an expeditious manner *to enable the child to achieve permanency*, consistent with the child's best interests, at the earliest possible date.

Tenn. Code Ann. § 36-1-101(a) (emphasis added).

If we were to adopt Father's interpretation of Section 36-1-113(g)(6), it would operate to contravene this legislative purpose. Under Father's interpretation, a child born even one day after a parent is sentenced to ten or more years imprisonment would be deprived of the possibility of a stable home environment for the entirety of the parent's incarceration, while a child born a day before sentencing would be afforded this protection. Such a result is contrary to reason. On the other hand, a construction of the statute to include the period of pregnancy serves the legislative goals of providing permanency and protecting the day-to-day needs of children.

Therefore, both the broader statutory scheme and the purpose behind the statute at issue support the conclusion that Tenn. Code Ann. § 36-1-113(g)(6) is an applicable grounds for terminating Father's parental rights in this case.

In so holding, we are unpersuaded by Father's argument that, because he was unaware that his child had been conceived at the time of sentencing, Tenn. Code Ann. § 36-1-113(g)(6) cannot be used to terminate his parental rights. Although Father correctly observes that the "wanton disregard" statute applies only when the parent has knowledge of the child in question, this is based on the language of Tenn. Code Ann. § 36-1-102(1)(A)(iv), which requires that the parent "disregard" the child. *See In re Anthony R.*, 2015 WL 3611244, at *3 ("Logically, a person cannot disregard or display

- 11 -

indifference about someone whom he does not know exists."). Conversely, termination under the statute at issue in this case is not based on the parent's actions or knowledge, but is based on the parent's status—i.e., having received a prison sentence of ten or more years. *See* Tenn. Code Ann. § 36-1-113(g)(6). Therefore, Father's knowledge of the child at the time of sentencing is irrelevant.

### B. Constitutionality of Tenn. Code Ann. § 36-1-113(g)(6)

Additionally, Father argues that application of Tenn. Code Ann. § 36-1-113(g)(6) to these facts would render the statute unconstitutional. Specifically, he contends that under this application, the statute would no longer be narrowly tailored and, therefore, would not pass the strict scrutiny standard required for laws that affect fundamental rights. Father argues that the trial court erred in failing to consider this issue.

It has long been the rule that questions not raised in the trial court, including constitutional attacks on a statute, may not be raised for the first time on appeal "unless the statute involved is so obviously unconstitutional on its face as to obviate the necessity for any discussion." *Lawrence v. Stanford*, 655 S.W.2d 927, 929 (Tenn. 1983). Moreover, the Tennessee Supreme Court has held that "there is little difference between an issue improperly raised before the trial court at the last minute and one that was not raised at all." *In re Adoption of E.N.R.*, 42 S.W.3d 26, 32 (Tenn. 2001).

For example, in *In re Adoption of E.N.R.*, the Tennessee Supreme Court dealt with a constitutional challenge to Tenn. Code Ann. § 36-1-113(g)(6), the same statute at issue in the present case, that was raised for the first time by counsel during closing arguments. *Id.* at 30. In finding that the issue had been waived, the Supreme Court reasoned as follows:

> Section 36-1-113 is presumed to be constitutional. *See, e.g.*, *In re Burson*, 909 S.W.2d 768, 775 (Tenn. 1995). [The father], as challenger, bore the "heavy burden of overcoming that presumption." *See Helms v. Tenn. Dep't of Safety*, 987 S.W.2d 545, 550 (Tenn. 1999). The burden of proof and persuasion rests with him even though § 36-1-113 affects a fundamental right. *WRG Enters., Inc. v. Crowell*, 758 S.W.2d 214, 215-16 (Tenn. 1988); *see generally Hawk v. Hawk*, 855 S.W.2d 573 (Tenn. 1993). Numerous Tennessee cases hold that the trial court must be afforded the first opportunity to judge whether a challenger has met those burdens.
>
> A conclusory contention that a statute is unconstitutional, raised for the first time in closing argument and only after the court indicates the merits do not weigh in that litigant's favor, does not present an attractive issue for appellate review. This Court "is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are *presented and*

*decided* in the trial courts, and a record thereof preserved as prescribed in the statutes and Rules of this Court." *Dorrier v. Dark*, 537 S.W.2d 888, 890 (Tenn. 1976) (emphasis added). We find, on this record, that the challenge to the constitutionality of § 36-1-113(g)(6) and § 36-1-113(c)(2) was neither "presented" nor "decided."

*Id.* at 31-32 (emphasis in original). The Court further noted that, due to the importance of correctly resolving constitutional issues, procedural technicalities should rarely prevent their adjudication. *Id.* at 32. However, "[n]o one should be more keenly aware of the importance of the issue at hand than [the challenger]." *Id.* Because the father's "argument against the constitutionality of the statute . . . was little more than an afterthought," the Supreme Court concluded that it was not properly raised in the trial court and was effectively waived for full consideration on appeal. *Id.*

We find this reasoning applicable to the case at hand. Here, Father first raised the constitutional challenge to Tenn. Code Ann. § 36-1-113(g)(6) ten days after the close of proof, in his brief on the issue of whether the statute applies to a child in utero—an issue raised during opening arguments at trial. Father contends that this argument should be considered timely because the issue became apparent to him only "after being directed [by the court] to review the record of existing cases." However, it is not incumbent upon the court to require that a party research case law, especially where, as in this case, that research pertains to an issue raised during the party's own opening statement. Father had every opportunity and incentive to challenge the validity of the statute that would deprive him of his parental rights; yet, he failed to plead the issue or even raise it until well after the close of proof. Accordingly, the juvenile court properly determined that Father's constitutional challenge was not timely made and was, therefore, waived.

For the forgoing reasons, we conclude that the evidence clearly and convincingly establishes grounds for the termination of Father's parental rights.

## II. BEST INTERESTS OF THE CHILD

If one of the statutory grounds for termination is proven by clear and convincing evidence, a parent's rights may be terminated if termination is in the best interests of the child. *In re Heaven L.F.*, 311 S.W.3d at 440; *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

The legislature has identified nine statutory factors for the court to consider in making a best-interests analysis, *see* Tenn. Code Ann. § 36-1-113(i); however, this list is not exhaustive, and the court need not find the existence of every factor before it may conclude that terminating an individual's parental rights is in the best interests of a child. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *In re Audrey S.*,

182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). Further, in considering a petition to terminate parental rights, the court is called to make a determination of the child's best interests from the perspective of the child rather than the parent. *In re Heaven L.F.*, 311 S.W.3d at 441.

In assessing the child's best interests, one factor to be considered is "[w]hether a meaningful relationship has . . . been established between the parent or guardian and the child." Tenn. Code Ann. § 36-1-113(i)(4). In this case, Father has been incarcerated since the child's birth, and although Father has had written contact with the child and occasionally sends the child gifts, the child has never met Father in person. As a result, the child does not have a meaningful relationship with Father. Therefore, we conclude that this factor weighs in favor of termination.

Another statutory factor is "[w]hether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner." Tenn. Code Ann. § 36-1-113(i)(7). Here, Father is a persistent criminal offender, having been in and out of prison for over twenty-five years. Most recently, Father pled guilty to the possession and sale of crack cocaine in 2009 and testified to having used the drug as recently as 2011. Based on these facts, it is likely that the child would be exposed to criminal behavior and illicit substances in Father's home. Therefore, this factor also favors termination.

"The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition," is also a factor to be considered. Tenn. Code Ann. § 36-1-113(i)(5). In this case, the record indicates that the child's foster parents have cared for her for over two years and have provided for the child's special medical and educational needs. The foster family has indicated a desire to adopt the child and would provide her with a permanent home. Conversely, were Father to retain custody, the child would be deprived of this stability. Instead, the child would potentially spend the next nine years in foster care awaiting the possibility of her father's release.[5] Further, the child would also likely be separated from her half-sister, who resides with the child and to whom the child is especially close. We believe these changes would be emotionally and psychologically traumatic to the child; thus, we agree that this factor supports termination of Father's parental rights.

Additionally, although Father contends DCS did not make reasonable efforts to place the child in the care of Father's relatives and failing to do so militates against a finding of best interests, we find this argument unpersuasive. As the Tennessee Supreme

---

[5] Although Father is eligible for parole in 2017, his sentence runs until 2025.

Court has recently indicated, "proof of reasonable efforts is not a precondition to termination of the parental rights of the respondent parent." *In re Kaliyah S.*, 455 S.W.3d at 555. Instead, "the extent of DCS's efforts remains a factor to be weighed in the best-interest analysis, not an essential element that must be proven in order to terminate the parental rights of the respondent parent." *Id.* at 556.

Here, DCS provided supervised visitation with Father's sister for several months, which eventually culminated in a request to the juvenile court for a trial home pass. Nevertheless, Father's sister informed DCS that she was no longer a placement option. When Father subsequently identified two of his nieces as potential placements, one of them declined and the other had a criminal history for domestic violence. DCS also considered Father's brother for placement; however, he was financially unable to care for the child and also had a criminal history. Thus, the record supports the conclusion that DCS made reasonable efforts to place the child with Father's relatives.

Based on these findings, we conclude the evidence clearly and convincingly supports the juvenile court's ruling that termination of Father's parental rights is in the child's best interests.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Earnest B.

_____
FRANK G. CLEMENT, JR., P.J., M.S.

- 15 -