IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 1, 2021

## IN RE LEANN K. ET AL.

**Appeal from the Juvenile Court for Franklin County**
**No. 2019-JV-125    Thomas C. Faris, Judge**

———————————————————————

### No. M2021-00053-COA-R3-PT

———————————————————————

This is a termination of parental rights case. The trial court entered an order terminating Father's parental rights as to five of his children. Father now appeals, contending that there was a lack of clear and convincing evidence in the record to support the trial court's decision. For the reasons stated in this Opinion, we vacate in part, reverse in part, but otherwise we affirm the trial court's termination of Father's parental rights.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part; Vacated in Part; Affirmed in Part and Remanded.**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which ANDY D. BENNETT and JOHN W. MCCLARTY, JJ., joined.

Glen C. Moore, Winchester, Tennessee, for the appellant, Samuel K.

Herbert H. Slatery, III, Attorney General and Reporter, and Kristen Kyle-Castelli, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

## OPINION

### BACKGROUND AND PROCEDURAL HISTORY

The Department of Children's Services ("DCS") has an extensive history with the family involved in this matter. DCS has previously initiated multiple investigations into the home of the mother, Cheryl K. ("Mother"), and father, Samuel K. ("Father"). Father has a lengthy criminal record and has been incarcerated since 2016. Due to his repeated incarcerations over the years, Father was only present for four of the estimated twenty DCS investigations. The subject matter of these investigations largely stemmed from concerns of environmental conditions and allegations of physical abuse. On December 12, 2019,

DCS filed a petition to terminate the parental rights of Mother[1] and Father as to five of their children, Leann K., Samuel K., Alfred K., Silas K., and Cheryl K. (hereinafter collectively referred to as "Children").[2]

In its petition, DCS alleged in pertinent part as follows:

26) [Father] has failed to manifest, by act or omission, an ability and willingness to personally assume the legal and physical custody of the children.

27) [Father] has failed to manifest, by act or omission an ability and willingness to personally assume financial responsibility of the children. After his conviction in June of 2012 for possession of Schedule II [narcotics] in Coffee County Criminal Court, he was sentenced to 11 months and 29 days. He followed that up by his conviction on November 16, 2016 for aggravated statutory rape. He was sentenced to 10 years for each of three counts and for 5 years for one count. He was sentenced on the last convictions while his wife was over 6 months pregnant with their fifth and final child.

28) Placing the children in [Father's] legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the children. In fact, he is still incarcerated, making placing with him [impossible].

. . . .

30) [Father] was sentenced to more than 10 years in jail for criminal conduct. On November 16, 2016 he was sentenced in the Criminal Court for Coffee County for aggravated statutory rape to 10 years, on count 2. He was sentenced to 10 years on count 3. He was sentenced to 10 years on count 4. He was sentenced to 5 years on count 5 for attempted [aggravated] statutory rape.

31) The children, Alfred [K.], Cheryl [K.], and Silas [K.], were younger than eight (8) years old when the sentence was imposed.

---

[1] Mother surrendered her parental rights as to Leann K., Silas K., and Cheryl K. However, in the same order terminating Father's parental rights as to the Children, the trial court noted that DCS had dismissed its petition against Mother regarding the termination of her parental rights as to Samuel K. and Alfred K. In this appeal, we concern ourselves only with the termination of Father's parental rights as to all the children at issue in DCS' petition.

[2] This Court has a policy of protecting identities in parental termination cases by initializing the names of certain persons mentioned in this Opinion.

. . . .

32) [Father] was incarcerated during all or part of the four (4) months immediately preceding the filing of this petition. He was sentenced for aggravated statutory rape on several counts in The Criminal Court of Coffee County on November 16, 2016.

. . . .

34) [Father] was engaged in conduct that exhibits a wanton disregard for the children's welfare.

. . . .

36) [Father] has been found to have committed severe child abuse as defined by statute, under any prior order of a court against any child. He committed aggravated statutory rape, by several counts, as well as convicted of attempted aggravated statutory rape.

The matter was ultimately heard on December 4, 2020, in the Juvenile Court of Franklin County, Tennessee. At trial, evidence of Father's previous criminal convictions was introduced, as well as testimony concerning domestic incidents that triggered prior DCS investigations. In its order, the trial court found that grounds had been proven by clear and convincing evidence to terminate Father's parental rights due to Father's 1) failure to manifest an ability and willingness to assume custody or financial responsibility of the Children pursuant to § 36-1-113(g)(14), 2) sentence of ten years pursuant to § 36-1-113(g)(6), 3) abandonment by an incarcerated parent pursuant to §§ 36-1-113(g)(1) and 36-1-102(1)(A)(iv), and 4) a conviction for severe child abuse pursuant to § 36-1-113(g)(4). The trial court also concluded that termination of Father's parental rights was in the Children's best interest. Thereafter, Father filed a timely notice of appeal.

### ISSUES PRESENTED

Father raises five issues for our review on appeal, which we have restated as follows:

1. Whether the trial court erred in finding that Father failed to manifest an ability and willingness to assume custody of the Children as a ground for termination pursuant to Tennessee Code Annotated section 36-1-113(g)(14);
2. Whether the trial court erred in finding that Father was serving a 10-year sentence that was imposed when Alfred K., Silas K., and Cheryl K. were under eight years of age as a ground for termination pursuant to Tennessee Code Annotated section 36-1-113(g)(6);

3. Whether the trial court erred in finding abandonment by an incarcerated parent as a ground for termination pursuant to Tennessee Code Annotated sections 36-1-113(g)(1) and 36-1-102(1)(A)(iv);

4. Whether the trial court erred in finding that Father had committed severe child abuse as a ground for termination pursuant to Tennessee Code Annotated section 36-1-113(g)(4); and

5. Whether the trial court erred in finding that the termination of Father's parental rights was in the best interest of the Children.

## STANDARD OF REVIEW

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016) (citing *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010)). Although this right is fundamental and constitutionally protected, it is not absolute. *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007). This right "continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). "[T]he state as *parens patriae* has a special duty to protect minors," *Hawk v. Hawk*, 855 S.W.2d 573, 580 (Tenn. 1993) (quoting *Matter of Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)), and "Tennessee law . . . thus . . . upholds the state's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Id.*

Under Tennessee law, "[w]ell-defined circumstances exist under which a parent's rights may be terminated." *In re Roger T.*, No. W2014-02184-COA-R3-PT, 2015 WL 1897696, at *6 (Tenn. Ct. App. Apr. 27, 2015). These circumstances are statutorily defined. *Id.* (citing *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005)). "To terminate parental rights, a court must determine that clear and convincing evidence proves not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). "'Clear and convincing evidence' is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" *Id.* (quoting *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). This heightened burden of proof required in parental termination cases "minimizes the risk of erroneous decisions." *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007).

Due to this heightened burden of proof, we must adapt our customary standard of review:

First, we must review the trial court's specific findings of fact de novo in

accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights.

*In re Audrey S.*, 182 S.W.3d at 861.

## DISCUSSION

*Grounds for Terminating Father's Parental Rights*

Tennessee Code Annotated section 36-1-113 sets forth several enumerated grounds for terminating parental rights.[3] Any of these grounds may be relied upon by a trial court in terminating a party's parental rights provided that the termination is in the best interest of the child. *Id.* at 862. In the underlying matter, the trial court relied on four separate grounds to terminate Father's rights to the Children. We will discuss three of those grounds in more detail herein.[4]

Abandonment by an Incarcerated Parent

Abandonment by an incarcerated parent as expressly defined by Tennessee Code Annotated section 36-1-102(1)(A)(iv) is established when:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months

---

[3] The petition to terminate Father's parental rights was filed on December 12, 2019. Therefore, we analyze the trial court's findings pursuant to the parental termination statute in effect at the time of filing. *See In re D.A.H.*, 142 S.W.3d 267, 273 (Tenn. 2004) ("[S]tatutes are presumed to operate prospectively unless the legislature clearly indicates otherwise.").

[4] Notably, on appeal, DCS does not defend the ground of severe child abuse in terminating Father's parental rights to the Children. Pursuant to Tennessee Code Annotated section 36-1-113(g)(4), this ground is established if:

> [t]he parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child.

Tenn. Code Ann. § 36-1-113(g)(4). In its brief, DCS concedes that the trial court improperly terminated Father's rights on this ground. Accordingly, we reverse this ground for termination without further discussion.

- 5 -

immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv).[5]

This Court has previously explained that this ground for termination does not apply simply due to the fact that a parent is incarcerated. *In re Audrey S.*, 182 S.W.3d at 866. Rather, "[a]n incarcerated or recently incarcerated parent can be found guilty of abandonment only if the court finds, by clear and convincing evidence, that the parent's pre-incarceration conduct displayed a wanton disregard for the welfare of the child." *Id.* Incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id.* This Court has previously held that "probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867–68. In determining whether certain conduct constitutes wanton disregard, we have explained that "'a parent's criminal behavior does not automatically constitute wanton disregard for the welfare of a child,' but such behavior 'may constitute such wanton disregard under the appropriate circumstances.'" *In re Johnathan M.*, 591 S.W.3d 546, 555 (Tenn. Ct. App. 2019) (quoting *In re Kierra B.*, No. E2012-02539-COA-R3-PT, 2014 WL 118504, at *8 (Tenn. Ct. App. Jan. 14, 2014)). "When considering whether a parent's criminal conduct constitutes wanton disregard, we consider 'the severity and frequency of the criminal acts.'" *Id.* (quoting *In re Kierra B.*, 2014 WL 118504, at *8). This Court has previously explained that "a person cannot disregard or display indifference about someone whom he does not know exists." *In re Bentley D.*, No. E2016-02299-COA-R3-PT, 2018 WL 1410903, at *4 (Tenn. Ct. App. Mar. 21, 2018) (quoting *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015)). Therefore, the wanton disregard provision of this ground "must be construed to require that the father has knowledge of the child at the time his actions constituting wanton disregard are taken." *Id.*

Turning to the trial court's order in the present matter, it found as follows when it concluded that this ground had been established:

> Proof was shown that there were 20 previous DCS investigations and

---

[5] The record makes clear that Father has been continuously incarcerated since 2016.

that his testimony was that [Father] was in the residence for only 4 of them. Further, that of the four, one was due to physical abuse and another for domestic violence. [Father] was incarcerated a significant period of time, and due to his willful criminal acts, was not available to care for the children, and was not available as an alternative placement due to the mother's involvement of dependency and neglect.

The Court finds that the conduct of [Father] exhibited a wanton disregard for the children's welfare. Abandonment by incarcerated parent . . . is met.

According to the trial court's order, it terminated Father's parental rights pursuant to this ground on the basis that his willful criminal acts constituted "wanton disregard" for the Children's welfare. However, we note that Silas K. was born in August of 2015, and Cheryl K. was born in February of 2017. Father has been continuously incarcerated since 2016. There is no evidence contained in the record evincing any conduct by Father subsequent to his aggravated statutory rape offense in September of 2013 until his incarceration for the offense in 2016. Therefore, we do not find there to be clear and convincing evidence that Father displayed wanton disregard regarding Silas K. and Cheryl K. such as to constitute abandonment by an incarcerated parent pursuant to Tennessee Code Annotated section 36-1-113(g)(1) and Tennessee Code Annotated section 36-1-102(1)(A)(iv). Therefore, at the outset of our analysis on this ground, we reverse the portion of the trial court's order on this ground as it pertains to Silas K. and Cheryl K.

On appeal, Father contends that the trial court erred in terminating his parental rights on this ground because "DCS has failed to prove by clear and convincing evidence that this criminal conduct is harming the kids specifically beyond the mere fact that [Father] is in and out of incarceration." Respectfully, we disagree. Again, we note that, although criminal behavior itself does not automatically constitute wanton disregard, we have previously held that "repeated incarceration, criminal behavior, . . . and the failure to provide adequate support or supervision for a child can, alone or in combination" constitute conduct amounting to a wanton disregard. *In re Audrey S.*, 182 S.W.3d at 867–68. The evidence contained in the record before us on appeal clearly shows that Father has been convicted numerous times for various crimes throughout Leann K., Samuel K., and Alfred K.'s lives. These repeated convictions and subsequent incarcerations evince a clear pattern of conduct wherein Father engaged in criminal activity. Moreover, Father's contention that "[t]he offenses [he] has been convicted of are mainly traffic violations," ignores his most recent and serious conviction for aggravated statutory rape, conduct similar to which this Court has previously found to evince a wanton disregard for the welfare of a child. *See In re Hannah C.*, No. M2016-02052-COA-R3-PT, 2018 WL 558522, at *7 (Tenn. Ct. App. Jan. 24, 2018) (finding that Father had exhibited a wanton disregard for the welfare of his child based on two separate statutory rape convictions as well as a conviction for especially aggravated exploitation of a minor). As such, we find no error on the part of the trial court

- 7 -

in finding that Father's repeated incarcerations as well as his "willful criminal acts" constituted a wanton disregard for the welfare of Leann K., Samuel K., and Alfred K.

We, therefore, affirm the trial court's order terminating Father's parental rights on the ground of abandonment by an incarcerated parent for Leann K., Samuel K., and Alfred K. However, we reverse the trial court's order on this ground as it pertains to Silas K. and Cheryl K.

Father's 10-Year Sentence

The trial court also found termination of Father's parental rights as to Alfred K., Silas K., and Cheryl K. was appropriate pursuant to the imposition of Father's ten-year sentence.[6] According to Tennessee Code Annotated section 36-1-113(g)(6), a ground for termination of parental rights is established when:

> The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court.

Tenn. Code Ann. § 36-1-113(g)(6).

Father argues that DCS failed to prove this ground by clear and convincing evidence because Father is "currently in the middle of a post-conviction battle." Our review of the record on appeal reflects that Father previously filed a "Petition for Relief from Conviction or Sentence" concerning his 2016 conviction.[7] However, we find this to be without merit as it pertains to the present termination proceeding. As this Court has previously noted,

---

[6] Father was convicted on three counts of aggravated statutory rape and one count of attempted aggravated statutory rape and received a sentence of 10 years on three of the counts and 5 years on the fourth count for a total of 35 years in prison. However, the sentences were ordered to be served concurrently for a total of 10 years.

[7] In his brief, Father also references another pleading filed pursuant to Tennessee Rules of Criminal Procedure 29, 33, and 34, titled "Motion for Acquit[t]al, Arrest of Judgment, and/or New Trial" (hereinafter "Motion"). An Advisory Commission Comment to Rule 29 reveals that "[t]he same time period of thirty days applies to motions for judgment of acquittal, motions for new trials, and motions in arrest of judgment. They may be filed in any order or together, without any waiver, but all must come within the thirty days after the date the order of the sentence is entered." Moreover, as noted by the Tennessee Supreme Court in *State v. Dodson*, 780 S.W.2d 778, 780 (Tenn. Ct. Crim. App. 1989), "[a] motion for a new trial is required to be filed within thirty (30) days of the date the order of sentence is filed in this cause. The provision is **mandatory**; and the time for the filing of a motion for new trial cannot be extended. A motion for a new trial which is not timely filed is a nullity." (emphasis added). Father was sentenced on November 16, 2016. However, he did not file his Motion until September 25, 2019, almost three years after his conviction. Therefore, based on the information available to us in the record, it does not appear that Father's Motion was timely filed. Thus, we decline to address the viability of this motion as to Father's purported "post-conviction battle" on the merits.

and Father acknowledges, "a court considering a petition for termination of parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." *In re Audrey*, 182 S.W.3d at 876. As such, Father's conviction in the present matter is entitled to "a presumption of correctness unless and until [it has] been set aside by a court of competent jurisdiction." *Id.*

Here, Father was sentenced to 10 years in prison after being convicted on three counts of aggravated statutory rape and one count of attempted aggravated statutory rape pursuant to Tennessee Code Annotated section 39-13-506(c). At the time of the imposition of Father's sentence, Alfred K. was five years old, Silas K. was one year old, and Cheryl K. was in utero and born three months after Father's sentence was imposed.[8] Therefore, we conclude that there existed clear and convincing evidence to support the finding that Father was convicted and confined in a correctional or detention facility under a ten-year sentence when three of the Children were under the age of eight. The trial court, therefore, properly terminated Father's rights pursuant to Tennessee Code Annotated section 36-1-113(g)(6) as to Alfred K., Silas K., and Cheryl K.

<u>Failure to Manifest an Ability and Willingness to Assume Custody of the Children</u>

Pursuant to Tennessee Code Annotated section 36-1-113(g)(14), this ground for termination is established when:

> A legal parent or guardian has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). Accordingly, there are two prongs which must be proven by clear and convincing evidence pursuant to this statute. *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020). The first prong involves determining whether the parent or guardian has manifested an ability and willingness to assume either legal and physical custody or financial responsibility of the child. *Id.* The second prong requires a determination as to whether placing the child in the parent's legal and physical custody would pose a risk of substantial harm to either the child's physical or psychological welfare. *Id.*

Having reviewed the record, we have determined that the trial court failed to address the second prong of the statute by failing to make a finding of "substantial harm." This

---

[8] Pursuant to *In re Adrianna S.*, 520 S.W.3d 548, 559 (Tenn. Ct. App. 2016), this Court has previously found that § 36-1-113(g)(6) includes a child in utero.

Court has previously held that a failure to make such a finding "requires us to vacate the trial court's order." *In re Autumn D.*, E2020-00560-COA-R3-PT, 2020 WL 6306056, at *5 (Tenn. Ct. App. Oct. 28, 2020); *In re Nevaeh B.*, No. E2020-00315-COA-R3-PT, 2020 WL 4920020, at *3 (Tenn. Ct. App. Aug. 20, 2020). Therefore, because we conclude that the trial court erred in terminating Father's parental rights on this particular ground under its current included findings, we vacate its order as it pertains to this ground.[9]

*Best Interest of the Children*

"Because not all parental conduct is irredeemable, Tennessee's termination of parental rights statute recognizes the possibility that terminating an unfit parent's parental rights is not always in the child's best interest." *In re Jacobe M.J.*, 434 S.W.3d 565, 573 (Tenn. Ct. App. 2013) (citing *In re Audrey S.*, 182 S.W.3d at 877). Thus, "[w]hen at least one ground for termination of parental rights has been established, as here, the petitioner must then prove by clear and convincing evidence that termination of the parent's rights" is in the best interest of the Children. *In re Joseph F.*, 492 S.W.3d 690, 706 (Tenn. Ct. App. 2016) (citing *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004)).

Tennessee Code Annotated section 36-1-113(i)[10] provides the following set of non-exclusive factors that the trial court shall consider in determining whether termination of a parent's parental rights is in the child's best interest:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

---

[9] Similar to our decision in *In re Dominic B.*, No. E2020-01102-COA-R3-PT, 2021 WL 774185, at *9 (Tenn. Ct. App. Mar. 1, 2021), we do not remand this case for a particular finding on the "substantial harm" issue here given that the record establishes that at least one ground for termination applies to each of the Children under review and, as discussed *infra*, that termination is in the best interest of the Children. We simply vacate the trial court's termination order with respect to this ground.

[10] Although not relevant to the issues posed by this particular appeal, we observe that Tennessee Code Annotated section 36-1-113(i) was recently amended by the General Assembly to incorporate additional factors to be considered as part of the best interest analysis under the statute. *See* 2021 Tenn. Pub. Acts, ch. 190, § 1. This amended version went into effect on April 22, 2021, well after the trial court's proceedings in this matter. As such, we analyze the best interest factors as they existed at the time of the proceedings in this case.

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "Ascertaining a child's best interests does not call for a rote examination" of these enumerated factors, and "depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878. When making this determination, "[t]he child's best interests must be viewed from the child's, rather than the parent's, perspective." *Id.* (citing *White*, 171 S.W.3d at 194).

Here, the trial court's order supports the conclusion that it considered the requisite best interest factors enumerated in section 36-1-113(i) when it determined that Father's parental rights should be terminated. The order specifically notes that it "went through the statutory list of considerations that are to be give[n] case specific appropriate weight." In considering these factors, it found that "it would be detrimental to take the three youngest children out of their pre-adoptive homes, and that it would not be in the other two children's best interest to continue the legal relationship with [Father] for a chance at permanency without disruption and emotional distress."

Based on our review of the record, we affirm the trial court's judgment. The evidence contained in the record clearly and convincingly supports that it is in the best interest of the Children that Father's parental rights should be terminated. As has been noted, Father is currently serving a 10-year prison sentence and has been in and out of prison for most of the Children's lives. In fact, Father has been incarcerated for the majority of his two youngest children's lives. Moreover, we also note that, prior to his

incarceration, Father was involved in four DCS investigations. According to the testimony, two of these DCS investigations involved environmental conditions where the home lacked electricity and running water, leading to the removal of the Children for four months. Another of the investigations was initiated due to concerns that Father was physically abusive. Father argues that he has completed "hours of intensive work through his suggested classes" to both "correct his behavior and learn new habits" such that, in the event of reunification with the Children, he may provide them with proper care. However, in *In re M.B.*, No. M2007-02755-COA-R3-PT, 2008 WL 2229518 (Tenn. Ct. App. May 29, 2008), this Court concluded that it was in the child's best interest to terminate the incarcerated father's rights despite the father's contention that "he 'has made many positive adjustments in both conduct and condition that will serve him well upon his release from prison in the near future.'" *In re M.B.*, 2008 WL 2229518, at *7. Similarly here, we do not find Father's argument concerning his attempts to improve and correct his past behavior to be dispositive of the best interest analysis. Rather, as this Court did in *In re M.B.*, we find the other factors to weigh more heavily in favor of termination. Specifically, we again note that Father is currently serving a 10-year sentence and has a lengthy history of periodic incarceration for the majority of the Children's lives. *See id.* ("[Father] will probably remain incarcerated for the foreseeable future, and his prospects for establishing such a home after he is released are uncertain at best."). As it currently stands, Father has no projected release date, and it is far from clear that Father's criminal activities will ultimately cease once he is released from prison based on his past history of incarcerations.

After reviewing the entire record on appeal, we conclude that DCS has proven by clear and convincing evidence that it is in the best interest of the Children to terminate Father's parental rights.

## CONCLUSION

In light of the foregoing, we reverse the trial court's termination of Father's parental rights on the ground of severe child abuse. We also vacate the trial court's termination of Father's parental rights on the ground of a failure to manifest an ability and willingness to assume custody of the Children, but we do not remand for additional findings. We affirm, however, the trial court's conclusion that there existed clear and convincing evidence to support its finding that termination is appropriate on the ground of abandonment by incarceration as to Leann K., Samuel K., and Alfred K., but reverse as to Silas K. and Cheryl K. We also affirm the trial court's termination of Father's parental rights on the ground of Father's 10-year sentence as to Alfred K., Silas K., and Cheryl K., and its determination that the termination of Father's parental rights is in the best interest of all of the Children.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE